IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No.   1:23-cr-00061-BKS |
| ) | |
| **v.** ) | |
| ) | |
| ) | **GOVERNMENT'S SENTENCING** |
| **BRIAN TIERNEY, a.k.a. "Wodanaz,"** ) | **MEMORANDUM** |
| ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby requests that the Court sentence the defendant Brian Tierney according to the Sentencing Guidelines, to a 60-month term of imprisonment, followed by three years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to comply with the sentencing factors in 18 U.S.C. § 3553(a).

## I.   FACTUAL BACKGROUND[1]

On April 16, 2024, the defendant pled guilty, pursuant to a plea agreement, to the indictment charging Conspiracy to Commit an Armed Bank Robbery, in violation of 18 U.S.C. §§ 371, 2113(a), (d). Dkt. 27 (Indictment); Dkt. 91 (Plea Agreement).

In pleading guilty, Tierney admitted that between November 14 and November 27, 2022, he agreed to and planned to commit an armed bank robbery of a Community Bank, N.A. in Johnstown, New York, with two co-conspirators, Luke Kenna a.k.a. "Lt.," and Michael Brown, Jr., a.k.a. "Russ." Dkt. 91 at 3-4. The conspiracy was formed on November 14 when Kenna created a chat labeled the "ᛋᛋ [SS] Screenwriters Guild," which Brown and Tierney joined. *Id.* During the

---

[1] The United States adopts the facts contained in the Presentence Investigation Report prepared by the U.S. Probation Office, which in turn relied upon law enforcement reports and related discovery provided by the United States.

1

conspiracy, Kenna conducted surveillance and photographed the bank on November 21, 2022, which he shared in the chat. *Id.* On November 22, 2022, Tierney ordered handgun parts for use in the robbery, and later, on November 27, 2022, Tierney sent Kenna photographs of the handgun and a radio scanning and jamming device he planned to use in robbing the bank. *Id.* During the conspiracy, Tierney also indicated that he planned to create dentifications using stolen identities and false vehicle license plates to avoid law enforcement detection for the purpose of committing the bank robbery. PSIR ¶¶ 43, 47. Tierney was a prohibited person at the time of these offenses, with prior felony burglary and weapons convictions. PSIR ¶¶ 22, 83, 85-86.

When Tierney's residence and vehicles were searched in January 2023, the FBI found multiple phones, night vision goggles, multiple radios, a radio jammer, multiple gun magazines (some of which were loaded), various rounds of ammunition, and six firearms, including a black Glock-style pistol with no serial number, and three silencers (also known as suppressors). PSIR ¶ 58. Other firearms components were also recovered, including a metal cylinder, a long-gun upper, and multiple pistol lower receivers. *Id.* Other seized items included holsters, a gas mask with the "ᏓᏓ" label, a lock picking kit, a wooden box labeled "Detonating Fuzzes Class C Explosives," and a picture stating, "Attack Media and Infrastructure." *Id.* Prior to his arrest, other witnesses had reported that Tierney was using firearms on the property he owned in Virginia. PSIR ¶ 24. On Tierney's cell phone showed that the user of the device was associated with a Threema account for username "Wodanaz," that Tierney had firearms, and included multiple communications and images and videos on his device sympathizing with extremist ideologies related to white supremacy and nationalism, Nazism, and accelerationism.[2]

---

[2] Accelerationism is an ideology centered on a belief that governments are "irreparably corrupt" and that "the best thing white supremacists can do is accelerate their demise by sowing chaos and creating political tension" with the ultimate goal to "collapse the government itself." *See* Zack Beauchamp,

The defendant has been detained since his arrest on January 13, 2023. PSIR ¶ 6. During his interview with law enforcement on that day, Tierney noted that he "would not have allowed himself to be captured" if his wife was not there. He also affirmed his white nationalist and antisemitic views during his interview, including statements affirming his racial attitudes towards black and Jewish people, and denying that the Holocaust happened.

During his interview with Probation, Tierney has admitted he supports white nationalist ideologies and has a Swastika tattoo, among others. PSIR ¶ 24. Tierney has not expressly disavowed any affiliation with extremist groups, but merely stated that he would be willing to do so if it meant that he could be released sooner. PSIR ¶ 62.

II.   APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

   a.   Statutory Provisions

Count 1 is a Class D felony that carries a maximum term of imprisonment of 5 years, a maximum fine of $250,000, and a term of post-imprisonment supervised release of up to three years. 18 U.S.C. §§ 371, 3571(b), 3583(b)(2). A special assessment of $100 must also be imposed under 18 U.S.C. § 3013.

   b.   Guidelines Provisions

      i.   Criminal History Category

The United States agrees with Probation that Tierney has a total criminal history score of eight, which establishes a criminal history category of IV. PSIR ¶ 87.

---

*Accelerationism: the obscure idea inspiring white supremacist killers around the world,* Vox, Nov. 18, 2019, https://www.vox.com/the-highlight/2019/11/11/20882005/accelerationism-white-supremacy-christchurch.

### ii. Offense Level Computation

The United States agrees with the Probation Office's offense level computation, including the application of two upward adjustments because the object of the offense was a financial institution, and because the intended offense involved the possession and/or brandishing of a firearm. PSIR ¶¶ 64-75. The United States also agrees that a decrease in the offense level is warranted because the conspiracy was not completed. PSIR ¶ 67.

Remarkably, the defendant objects to the five-level upward adjustment because the intended offense involved the possession and/or brandishing of a firearm on the basis that he merely planned to use knives (i.e., "sharp stuff") but no firearms. Dkt. 115 at 5. That does not align with the overwhelming amount of evidence in this case, from the defendant and his co-conspirators. As noted in the PSIR, during the encrypted chat communications to plan the bank robbery, Kenna referenced how they would need to have "clean p80s too" and Tierney later wrote in response, "I just ordered completion parts for my p80 g19" and "Threaded," indicating he had ordered firearms parts for a polymer-80 Glock-style pistol, and on November 27, 2022, Tierney sent an image of the purchased handgun. PSIR ¶ 66. Tierney even stated that in completing the robbery, "[t]he most important thing is gonna be securing the room before the pin gets pulled and getting out quick," referring to potentially pulling the pin out of a grenade, another type of firearm. PSIR ¶ 66. It was therefore no surprise that when law enforcement searched the defendant's residence, they found multiple firearms and firearms parts, including silencers and a firearm that matched the image of a firearm that Tierney sent to Kenna in the chat conversation. PSIR ¶ 58.

Even if Tierney's possession and discussion about the intended possession and use of firearms to commit the bank robbery were somehow not sufficient, his co-conspirators also talked about and possessed firearms to be used for the bank robbery: when Kenna was stopped, he also

4

had a "p80" Glock-style firearm and a ballistic vest, and also possessed a rifle, PSIR ¶¶ 26-27; and Brown and Kenna communicated about getting p80s for the bank robbery too, PSIR ¶ 40. Accordingly, there is a substantial basis to conclude by a preponderance of the evidence that the intended offense, including the conduct of the defendant and his conspirators, meant to possess and brandish firearm and that the enhancement should be applied here.

The United States also disputes the defendant's request for a two-level decrease in the offense level as a minor participant under U.S.S.G. § 3B1.2(b). In determining whether to apply such an adjustment, the Court should consider: "(i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and] (v) the degree to which the defendant stood to benefit from." U.S.S.G. § 3B1.2, application note 3(C). Here, as reflected in the PSIR, Tierney understood the entire scope and structure of the bank robbery conspiracy and made significant suggestions about how the robbery should be committed, including by offering to provide fake identifications and false license plates to avoid detection by law enforcement. PSIR ¶¶ 32-52. While Kenna recruited him and took the lead in conducting surveillance, the defendant was an equal partner and stood to benefit equally from the robbery. He was not an unwitting pawn in Kenna's plan with little to no knowledge about the ultimate plans of the scheme, with no discretion to commit violence or plan the robbery; on the contrary, it was a partnership between the three members of the conspiracy. Even though Tierney did not travel to New York, he indicated that he planned to do so before the

robbery and likely would have done so if Kenna had not been arrested and law enforcement had luckily intervened. Other federal courts have deemed similarly situated participants to be ineligible for a "minor participant" downward adjustment. *See, e.g., United States v. Brumfield*, 89 F.4th 506 (5th Cir. 2023) (no clear error in determining that defendant was not a "minor participant" in bank robbery when he took part in planning and organizing robbery, planned to be the getaway driver, and he stood to benefit financially from robbery); *United States v. Adams*, 751 F.3d 1175 (10th Cir. 2014)(defendant was not entitled to minor-participant reduction on basis that he knew plan's purpose of robbing bank and provided transportation and expected to be compensated for his role as lookout). Accordingly, like Brumfield and Adams, Tierney should not be considered a "minimal participant" and no downward adjustment for a mitigating role should be applied here.

The United States agrees with Probation that the defendant is entitled to a two-level downward adjustment of the offense level for acceptance of responsibility pursuant to USSG § 3E1.1(a), and hereby moves for an additional one-level downward adjustment pursuant to USSG § 3E1.1(b) to credit the defendant for timely notifying authorities of his intention to enter a plea of guilty. PSIR ¶¶ 73-74.

As a result, the government agrees that the total offense level should be 21. PSIR ¶ 75.

### c. Guidelines Calculations

The Government agrees with Probation's guideline calculations. Based upon a total offense level of 21, and a criminal history category of IV, the Guidelines recommend 57 to 60 months of imprisonment, between 1 and 3 years of supervised release, and a fine between $15,000 to $150,000. PSIR ¶¶ 110, 115, 120.

### III. GOVERNMENT'S SENTENCING RECOMMENDATION

The United States requests that the Court sentence the defendant according to the Sentencing Guidelines, including a 60-month term of imprisonment, and three years of post-imprisonment supervised release.

Based on his apparent inability to pay, the government does not recommend that the Court impose a fine. *See* PSIR ¶ 109; U.S.S.G. § 5E1.2(a) (fine may be waived where "defendant establishes that he is unable to pay and is not likely to become able to pay any fine").

#### A. The Nature, Circumstances, and Seriousness of the Offense

The requested sentence to be imposed should reflect the nature and seriousness of the defendant's conspiracy to commit an armed bank robbery. The seriousness of this crime is reflected in the sentencing enhancements applied in this case—namely, that the defendant intended to use, possess, and brandish firearms to commit the robbery, and that the defendant intended to rob a financial institution.

As an initial matter, bank robbery, whether armed or unarmed, is a crime of violence and may subject a defendant to sentencing enhancements in other contexts. *See Killion v. United States*, 728 F. App'x 19, 21 (2d Cir. 2018) (holding that federal armed bank robbery was a "violent felony" under Armed Career Criminal Act); *United States v. Chimurenga*, 760 F.2d 400 (2d Cir. 1985) (Under Bail Reform Act allowing pretrial detention of defendant charged with "crime of violence," holding that conspiracy to commit armed robbery is "crime of violence"); *Young v. United States*, 22 F.4th 1115, 1123 (9th Cir. 2022) ("aiding and abetting a crime of violence, such as armed bank robbery, is also a crime of violence"). Those enhanced penalties reflect the reality of the dangers that an armed bank robbery poses, including a significant risk of injury to innocent bystanders being held at gun point to rob a bank. Here, the defendant and his conspirators contemplated using

7

knives and firearms, including potentially grenades, silencers, gas masks, radio jamming devices, and other weapons, to intimidate and coerce, and potentially even restrain, employees at the Community Bank in Johnstown to steal money. Though the entire conspiracy lasted less than a month before it was cut short, each of the defendants took overt acts and concrete steps towards accomplishing the conspiracy's objective. For Tierney, he helped plan the robbery, planned to serve as the driver, purchased an untraceable "p80" firearm (along with his other long guns) and a radio jamming device, and created false identifications and license plates to avoid detection by law enforcement. PSIR ¶¶ 34, 43, 47.

The defendant's shared neo-Nazi, accelerationist, antisemitic, and white nationalist ideology with his conspirators contributed to the offense and highlights his danger to the community, regardless of whether Tierney now self-servingly states that he *would* disavow contact with those extremist groups and ideologies if he were given some leniency. Those extremist white supremacist ideologies create a dangerous environment and have been deemed the "most lethal terrorist threat to our homeland today" as the "intelligence community has assessed that domestic racially and ethnically motivated violent extremist groups, which advocate for the superiority of the White race, have, 'the most persistent and concerning transnational connections' of all U.S. domestic violent extremists." *Racially and Ethnically Motivated Violent Extremism: The Transnational Threat, Before the H. Sub. Comm. on Intel. and Counterterrorism of the Comm. On Homeland Sec.*, 117th Cong. 1 (2021) (statement of Hon. Elissa Slotkin, Rep. from State of Mich.).

While the offense conduct was not a hate crime, nor was it overtly racially motivated or intended to further Tierney's extremist views, it was motivated by greed and financial gain. By his own admissions, Tierney was in debt and blamed the medical field, and the entire "system," for the unfortunate death of his son. PSIR ¶ 61. That irrational thinking set off his desperate and ill-

conceived plan in motion, aware of the significant dangers and levels of criminality it required. Moreover, he took significant steps to evade detection by law enforcement, including buying a radio jammer device and weapons. PSIR ¶ 58.

It should also be noted that even if the defendant had not conspired to commit an armed bank robbery in the Northern District of New York, the defendant's possession of firearms as a prohibited person in Virginia (and potentially elsewhere) would likely yield a substantial guideline range on its own. The defendant's possession of multiple firearms, and his encouragement of both Kenna and Brown, each prohibited persons as well, to obtain such firearms too, shows the significant dangers that his offense conduct poses to the gun violence epidemic nationwide.

### B. The History and Characteristics of the Defendant

The defendant's criminal history—with multiple prior felonies including burglary and weapons offenses—indicates that he poses a significant risk of recidivism following his prison term. PSIR ¶¶ 81-91. Like the instant offense, the defendant's prior burglary offenses also appeared to be financially motivated, as he was involved in a string of burglaries where he and another co-defendant entered multiple dwellings and stole jewelry and currency. PSIR ¶ 85. The instant offense represents a return to conspiring to do what he had already tried to do previously.

The defendant also has a history of abusing alcohol, particularly after his son died in 2022, and may also have contributed to his criminal behavior. PSIR ¶ 104. He apparently completed a program in December 2019, but that program did not prevent the defendant from engaging in criminal activity. PSIR ¶ 105. Given his admitted use of alcohol as a coping mechanism, Tierney poses a greater risk of recidivism if his addictions are untreated, or even insufficiently treated, and warrants imposing special conditions and treatment for any period of supervision imposed to ensure that his rehabilitation is being adequately monitored. *See* PSIR at 37.

The defendant's mental and emotional health may also contribute to his criminal activity given that he has reported certain significant mental health issues, including depression, bipolar disorder and other mood disorders and prior medications, which, if left untreated, could also contribute to his recidivism risk. PSIR ¶¶ 100-103. Accordingly, the Government also recommends that the Court impose special conditions for the evaluation and treatment of his mental health during any term of supervised release, which will help to address any mental health issues he may face as he re-enters the community and assist in his rehabilitation. *See* PSIR at 37.

### C. Respect for the Law, Just Punishment, and Deterrence

A Guideline term of imprisonment will also promote respect for the law, provide just punishment, and provide both specific deterrence to the defendant and general deterrence to the population at large. *See* 18 U.S.C. § 3553(a)(2). The requested sentence will serve as a general deterrent to those who attempt to commit bank robberies and to possess firearms while prohibited from doing so. Those would-be criminals need to know that they cannot conspire to commit a dangerous armed bank robbery without being met with significant consequences.

It will also serve as a specific deterrent to protect the public from the future crimes that Tierney would commit. If not for his arrest, Tierney likely would have gone through with the bank robbery in January 2023 causing significant financial losses to the bank, as well as instilling fear, terror, and potentially other injuries to the victimized bank tellers and witnesses, as well as the significant resources from law enforcement that would have been devoted to identifying the perpetrators.

A guideline prison sentence also reflects the appropriate sentencing range established by the Sentencing Guidelines and avoids unwarranted sentencing disparities among defendants. "[I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough

10

approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *see Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that the guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Moreover, within-Guidelines sentences promote Congress's goal in enacting the Sentencing Reform Act: "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007).

Those guidelines have been used and deemed reasonable by other federal courts, including in the Northern District of New York, in sentencing other defendants for similar firearms and robbery offenses. *See, e.g.*, *United States v. Walls*, 1:19-cr-00279-MAD, ECF No. 257 (N.D.N.Y. Jan. 17, 2024) (sentencing defendant within the applicable Guidelines for armed bank robbery conspiracy); *United States v. Workman*, 5:21-CR-133 (GTS) (N.D.N.Y. Feb. 10, 2022), ECF No. 48 (imposing a Guideline sentence for possession of a firearm as a prohibited person on a defendant with white supremacist affiliations). This Court has also sentenced both of the defendant's co-conspirators to sentences near or within the applicable guideline ranges, considering their respective criminal histories. *See* Dkt. 109 (judgment for Michael Brown for sentence of 37 months); Dkt. 110 (judgment for Luke Kenna for guideline sentence of 41 months). The Court should avoid disparity among defendants and sentence Tierney to a Guideline sentence commensurate with his involvement in the crime.

IV.  **RESERVATION OF RIGHTS**

If the Court is considering a departure from the applicable Guidelines range on previously unidentified grounds, the United States requests an opportunity to respond. Fed R. Crim. P. 32. The United States also requests any *ex parte* communications received in connection with sentencing, except for the confidential recommendations filed by the Probation Office.

## V. CONCLUSION

Given the nature and characteristics of this offense involving a conspiracy to commit an armed bank robbery, the United States recommends that the Court sentence Brian Tierney according to the Sentencing Guidelines, to a 60-month term of imprisonment followed by three years of supervised release.

Dated: July 29, 2024                                Respectfully submitted,

                                                    CARLA B. FREEDMAN
                                                    United States Attorney

                                    By:    */s/ Alexander P. Wentworth-Ping*
                                           Alexander P. Wentworth-Ping
                                           Assistant United States Attorney
                                           Bar Roll No. 701897